STATE OF NORTH CAROLINA v. JAMES HIRAM TILLMAN.

(Filed 20 January, 1967.)

**1. Criminal Law § 101—**

The test of the sufficiency of circumstantial evidence to be submitted to the jury is the same as the test for direct evidence: there must be evidence tending to prove the fact in issue or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction and not merely such as raises a suspicion or conjecture of guilt.

**2. Larceny § 7—**

Evidence tending to show that defendant was loitering around a store in a shopping center for the better part of a week, that on the day of the larceny defendant was present, alone, in that part of the store which was behind locked doors and clearly marked for employees only, and that the door had been jimmied open and money and valuables taken from the safe therein, *held* sufficient to be submitted to the jury in a prosecution for larceny.

APPEAL by defendant from *Bickett, J.,* February 1966 Criminal Session of ALAMANCE.

Defendant was tried upon a bill of indictment charging that on September 3, 1965 (1) he broke into and entered the storehouse of Byrd Grocery Company, Inc., with the intent to steal chattels and money kept therein, and (2) he did feloniously steal $3,194.00, the property of Byrd Food Company, a corporation. Defendant offered no evidence.

The evidence for the State tends to show: Byrd's Food Store (Byrd's) occupies premises owned by Byrd's Grocery Company, Inc., in the eastern end of the Cum-Park Plaza, a shopping center in the city of Burlington. Practically every morning and afternoon during the week preceding Friday, September 3, 1965, Carl Parks, one of the owners of the shopping center, had observed defendant and one Howard Overman loitering about the shopping center. One

day he observed them seated in an automobile parked in a space which "wasn't used much in the daytime." One afternoon about 5:30, he saw them go around to the back of the Remnant Shop, which is next to Byrd's. From time to time during that week, he had observed Overman walking up and down the mall, spitting on the sidewalk — deportment that "got on his nerves."

Joe Cole, a former sheriff of Alamance County and an employee of the Remnant Shop, observed Overman and defendant for three or four hours on Thursday afternoon, September 2. Defendant was in an automobile parked near a lamppost across from Byrd's. Overman was not with defendant all the time, but Cole observed conversations between the two men. Cole mentioned the presence of Overman and defendant Tillman to James Young, another employee of the Remnant Shop. On Thursday, Young observed defendant from noon until about 4:00 walking up and down the walkway looking into the store. He also saw defendant on Friday, September 3. On both Thursday and Friday, he observed two cars drive up to the vehicle in which defendant was sitting. On Thursday morning and about lunchtime on Friday, the checker at Byrd's saw Overman in the store.

On Friday morning, September 3, at about 8:30, Nellie Wilson, a clerk from the main office of the Byrd corporations, went to the Cum-Park Plaza store. She handled the money for that particular store, which opened at 9:30. The store's office, stockroom, motor room, and two restrooms were located on the second floor, which was reached by stairs located behind double doors at the back of the store proper. These double doors bore the notice, "Employees Only." Miss Wilson got the key to the office from the manager, James Ford, went upstairs and unlocked the door to the office, which contained the 3 x 2-foot safe ("really just a firebox") in which money was kept. She knew the combination to the safe. She opened it and then counted the money it contained — $2,173.89. Thereafter, she went to the bank and secured $3,000.00 in cash. She returned to the store, put $1,584.00 in the cash register, left cash and checks in the amount of $414.89 in the till, and also $3,175.00 in the safe. She then put the combination of the safe on "day lock." When the combination was thus set, the safe could be opened by simply turning the combination to a certain number. At 10:00, she locked the door and left. The door to the office was opened by inserting and turning a key in the knob. When the door was closed. it locked automatically.

About 12:02, Sergeant Webster of the Burlington Police and Mr. Wayne Taylor, administrative assistant to Mr. Hugh Cummings, one of the owners of the shopping center, went into Byrd's. After in-

quiring for the manager, they went through the double doors into the back area of the store. They observed Howard Overman about 2-3 feet from the stairs coming toward them, walking toward the double doors. Webster followed Taylor up the stairs, "stepping distance behind" him. Part of the way up, he turned to be sure that Overman had left the area and was not following them. When Taylor got to the landing in front of the office door, he knocked. The door was opened 6-8 inches from the inside by a man whom Taylor knew was not employed by Byrd's. Taylor later identified the man from photographs in the files of the Burlington Police Department as defendant Tillman. Taylor asked the man if Mr. Ford was there. He said that Ford was downstairs and closed the door. Webster (who knew Tillman) heard the conversation but did not see the man because Taylor blocked his view. At the time, Taylor remarked to Webster that the man who opened the door must be somebody from the central office. At that time, the two men noted no signs of any forcible entry into the office.

During the forenoon of September 3, 1965, the store manager, Ford, did not go into the office although he had several times gone upstairs to the stockroom for merchandise. When he returned from lunch at 1:00, one of the checkers needed change, and he went into the office to get it. He found the door closed and locked, and the safe on day lock. Ford did not, at that time, notice any injury to the office door. When he opened the safe, he discovered that the money was gone. He immediately called Mr. Byrd, who arrived at 2:00. The police came sometime thereafter. This time Sergeant Webster observed that the paint had been broken from the door strip, which was pulled from the wall about 1/32 of an inch, just enough to be noticeable. On that part of the latch which comes in the doorjamb were two scratch marks. The safe itself was not damaged. The door easily could have been opened by the insertion of a knife blade behind the door strip. That door, according to Mr. Byrd, was "something to keep honest folks out."

In addition to Ford, the assistant manager — a Mr. Smith —, and a Miss Cook of the main office had keys to the Cum-Park store. When managers were changed, the lock on the outside door was always changed, but the lock on the office door and the safe combination had never been changed. Five former store managers knew the combination to the safe.

Defendant's motions for nonsuit were overruled. The jury's verdict was "guilty as charged in the bill of indictment." From the judgment that he be imprisoned for not less than six nor more than eight years on each count, the sentences to run concurrently, defendant appeals.

*T. W. Bruton, Attorney General; Harrison Lewis, Deputy Attorney General; Charles M. Hensey, Trial Attorney, for the State. Fred Darlington, III, for defendant.*

SHARP, J.   This appeal presents only the question whether the State's evidence is sufficient to withstand the motions for nonsuit. The State's evidence is circumstantial, but the test of its sufficiency is the same whether the evidence be circumstantial, direct, or both. *State v. Bogan,* 266 N.C. 99, 145 S.E. 2d 374. "If there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury." *State v. Johnson,* 199 N.C. 429, 431, 154 S.E. 730, 731. *Accord, State v. Roux,* 266 N.C. 555, 146 S.E. 2d 654; *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431.

Defendant contends that the State's evidence discloses no more than an opportunity for the defendant to have taken the money and that it further reveals that others had an equal opportunity to have taken it. With this contention we cannot agree. Viewing the evidence in the light most favorable to the State — as we are required to do in evaluating a motion for nonsuit, 1 Strong, N. C. Index, Criminal Law § 99 — it is clear that defendant and Overman spent a large part of the week before Friday, September 3, in apparent idleness at the Cum-Park Plaza Shopping Center. They did no work there, but sat in an automobile or loitered in the vicinity of Byrd's and the Remnant Shop. The reasonable inference is that they were reconnoitering one or both of those places of business, probably, Byrd's since Overman was seen at least twice inside that store. Their actions aroused the suspicions of Joe Cole, a former sheriff of the county, who knew them both, and he mentioned their activities to Young, the administrative assistant to one of the owners of the shopping center. Undoubtedly, Cole thought that the two men were "casing the joint." On Friday at noon, Young went with a policeman into Byrd's — for what purpose the record does not specifically state — but their presence coincided with Overman's and defendant Tillman's, whom they encountered in that part of the store which was clearly posted for "Employees Only." At a time when the manager was out to lunch, defendant Tillman was inside the office from which the money was taken. At the same time, Overman was seen 2-3 feet from the stairs going toward the double doors.

Defendant had no legitimate business in the office. Those who did, had access to a key. Someone who had no key had evidently used a knife to jimmy the lock to obtain entrance. If that person were one other than defendant, the record does not suggest it. When

defendant opened the door at Taylor's knock, he opened it only 6-8 inches wide and closed it as soon as he had answered Taylor's question.

After a week of loitering in the shopping center, defendant's unauthorized presence in the office where the money was on the day it disappeared permits the logical inference that he is the thief who broke into and entered the office. To quote Lord Byron: "A 'strange coincidence,' to use a phrase. . . ."

No error.