STATE OF NORTH CAROLINA v. CAROLYN LEDBETTER
No. 6929SC154

(Filed 30 April 1969)

**1. Criminal Law § 26— plea of former jeopardy — ruling by court**
    Failure of the trial court to make a formal and specific ruling on defendant's plea of former jeopardy entered at the commencement of the trial was not prejudicial error, the plea having been denied as a matter of law since the court proceeded with the trial.

**2. Criminal Law § 26— former jeopardy — mistrial for illness of juror**
    Order of mistrial entered with consent of the parties during defendant's trial for involuntary manslaughter because of the sudden illness of a juror will not support a plea of former jeopardy at a subsequent

trial of defendant for the same offense, the order of mistrial for illness of a juror in a non-capital case being within the discretion of the trial court.

**3. Criminal Law § 26— former jeopardy — mistrial with defendant's consent**

Order of mistrial entered with defendant's consent will not support a plea of former jeopardy.

**4. Criminal Law § 15; Jury § 2— motion for change of venue or for special venire**

It is a matter of discretion with the trial judge whether to call a special venire or to remove the action to another county. G.S. 9-11(b), G.S. 9-12(a), G.S. 1-84.

**5. Jury § 2— motion for special venire**

In this prosecution for involuntary manslaughter of a child, no abuse of discretion is shown in the trial court's denial of defendant's motion for a special venire by fact that 22 out of 49 prospective jurors were excused for cause when they stated they were prejudiced against defendant and could not give her a fair trial.

**6. Homicide § 21— involuntary manslaughter by abuse or neglect of child — sufficiency of evidence**

In this prosecution for the involuntary manslaughter of defendant's stepchild, motion for nonsuit is properly denied where the evidence tends to show that the child died from peritonitis caused by a severe blow to the abdomen, that this condition existed in the child's body for approximately four hours prior to his death, that there were multiple bruises on the child's body, a bruise on the pancreas, and a torn bowel, that these injuries were caused by blunt force, that there were no noticeable bruises on the child the night before his death, and that defendant had actual and exclusive control and custody of the child for some seven hours preceding the child's death.

**7. Criminal Law § 106— nonsuit — sufficiency of circumstantial evidence**

The test of the sufficiency of circumstantial evidence to be submitted to the jury is the same as the test for direct evidence: there must be evidence tending to prove the fact in issue or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction and not merely such as raises a suspicion or conjecture of guilt.

**8. Criminal Law § 124; Homicide § 31— involuntary manslaughter prosecution — verdict of guilty of "manslaughter"**

In this prosecution for involuntary manslaughter, the trial judge did not err in accepting a verdict of guilty of "manslaughter" where the indictment charged defendant with the crime of involuntary manslaughter and the charge related only to involuntary manslaughter, it being clear that defendant was convicted of involuntary manslaughter when the verdict is interpreted with reference to the indictment, evidence, and charge.

**9. Criminal Law § 126— recall of jury and retaking of verdict**

In this involuntary manslaughter prosecution, where the jury's verdict of guilty of "manslaughter" is unambiguous when interpreted with reference to the indictment, evidence and charge, defendant was not prejudiced when the jury was recalled after it had been excused and a verdict of guilty of "involuntary manslaughter" was received from the jury, the substance of the verdict remaining unaltered and the purported second taking of the verdict being mere surplusage.

**10. Criminal Law § 128— motion to set aside verdict**

In this prosecution for involuntary manslaughter, trial court properly refused to set aside verdict of guilty of "manslaughter" where it is clear from the indictment, evidence and charge that defendant was convicted of involuntary manslaughter.

APPEAL by defendant from *Collier, J.,* 16 December 1968 Special Criminal Session, HENDERSON County Superior Court.

A proper bill of indictment charged that, on 27 July 1967, Carolyn Ledbetter (defendant) and her husband, Steve Ledbetter, "with force and arms . . . did unlawfully, wilfully and feloniously neglect, abuse and fail to provide for adequate medical treatment of their minor child, Christopher Bryan Ledbetter, age 3 years, and by such abuse, wilful neglect, and failure to provide for proper medical treatment did, kill and slay Christopher Bryan Ledbetter. . . ."

The evidence on behalf of the State would permit a finding that Christopher Bryan Ledbetter (Christopher) was a three-year-old boy who lived with his stepmother, the defendant, and his father, Steve Ledbetter, in the Town of East Flat Rock, Henderson County; from one o'clock until four o'clock on Sunday afternoon, 25 June 1967, Christopher was observed in the yard of the Ledbetter home playing on a sliding board; he was barefoot and dressed in a short sleeve shirt and short pants; the weather was rainy, cold and foggy at the time; Chrhistopher remained outdoors exposed until his father came home and accompanied him into the house. On 26 June 1967 a deputy sheriff of Henderson County went to the Ledbetter home, where he observed Christopher in the yard. He testified:

"I observed the little boy, Christopher sitting on a hobby horse in the yard. He was (*sic*) a tee shirt and a diaper on. The weather was very chilly, foggy and wet and had been raining over the night. I observed the physical condition of the child and he had chill bumps on him. His coloration was blue and he had two black eyes.

I saw [the defendant] and she asked me what I was doing

there and I told her that the neighbors had called and I want to advise her if she knew the seriousness of child abuse."

The evidence on behalf of the State would also permit a finding that, between two and three o'clock on Thursday afternoon, 27 July 1967, the defendant took Christopher to the office of Dr. Edgar Lee Baker, an admitted medical expert; Christopher was not alive at that time; Dr. Baker examined Christopher and found multiple bruises on his body and some extension of the abdomen; Dr. Kenneth A. LaTourette, an admitted medical expert, performed an autopsy and observed numerous bruises on the body, a bruise in the pancreas and a torn bowel. On direct examination, Dr. LaTourette expressed an opinion that the cause of death was "peritonitis or inflammation of the abdominal cavity and this condition existed in his body at least four hours prior to his death"; that these injuries were caused by "blunt force"; and that there had been approximately ten blows. On cross-examination Dr. LaTourette testified that most of the wounds were superficial and that the wound in the stomach or abdomen, which caused the death, could have been brought about by a fall.

At the close of the State's evidence, the defendant and her husband made motions for judgment as of nonsuit. The trial judge denied the defendant's motion, but sustained her husband's motion.

Steve Ledbetter, a defense witness, testified that, on the night of 26 July 1967, he gave Christopher a bath and "there were not any noticeable bruises on him to the extent that I would be concerned or alarmed about him." Since Steve Ledbetter departed for work at 7:30 a.m., he was at his place of employment when the defendant took Christopher to the office of Dr. Baker.

The defendant offered evidence as to her good character, the love and affection shown by her toward Christopher, and the care and attention she gave him.

At the conclusion of all the evidence, the defendant renewed her motion for judgment as of nonsuit. The motion was denied and the case was submitted to the jury. From a verdict of guilty and the imposition of a sentence of not less than five years nor more than eight years, the defendant appealed to this Court.

*Attorney General Robert Morgan and Assistant Attorney General Bernard A. Harrell for the State.*

*Arthur J. Redden for the defendant appellant.*

CAMPBELL, J.

The first contention of the defendant is that Judge Collier erred in refusing to rule on her plea of former jeopardy entered at the commencement of her trial. The record shows that, during the week of 9 December 1968, Judge Bryson presided over a special criminal session of the Henderson County Superior Court; this case was called for trial; the defendant and her husband entered pleas of not guilty; a jury was selected and impaneled before the noon recess; immediately after the noon recess, Judge Bryson withdrew a juror and ordered a mistrial with the consent of all parties. In the order declaring the mistrial, Judge Bryson found as a fact that a juror had been taken to a hospital in serious condition as the result of a sudden illness. The record further shows that, during the week of 16 December 1968, Judge Collier presided over this special criminal session; this case was again called for trial; the defendant and her husband entered pleas of former jeopardy and not guilty, whereupon Judge Collier, the solicitor, and the attorneys for the defendant and her husband retired to the judge's chambers for a discussion; they subsequently returned to the courtroom and the solicitor on behalf of the State proceeded to select the jury. The defendant took an exception because her plea of former jeopardy was not formally and specifically denied.

[1]    The defendant now claims that the trial court was requested to rule on this plea; the request was refused; and she was denied the right to be heard on this matter. The record, however, does not reveal any such request, refusal or denial. It is manifest, however, that the plea was denied as a matter of law since the court proceeded with the trial. The failure to make a formal and specific ruling under the circumstances of this case was not prejudicial error. See *State v. Garnett,* 4 N.C. App. 367, 167 S.E. 2d 63, for a discussion by Mallard, C.J., of a similar problem involving a trial judge's failure to specifically rule upon a motion of a defendant for judgment as of nonsuit.

[2]    A plea of former jeopardy is properly denied when a mistrial is declared as the result of a juror's sudden illness. In *State v. Battle,* 267 N.C. 513, 148 S.E. 2d 599, the defendants were charged with conspiracy to break and enter, with a felonious breaking and entering, and with possession of burglary tools. The defendants were arraigned and pleas of not guilty were entered. After a jury was selected and after the State began introducing evidence, a defense attorney became suddenly ill. The trial judge thereupon ordered a mistrial over the defendants' objection and continued the

case. On the second trial a plea of former jeopardy was entered. The Supreme Court stated:

> "Decision on the plea of former jeopardy depends upon the validity of the mistrial order. Unless that order can be upheld, jeopardy attached, and the plea would be good. If the order is valid, the plea is not good.
>
> . . .
>
> For obvious reasons the rule against a mistrial finds its maximum rigidity in capital cases. A more flexible rule applies in cases of less gravity. 'The ordering of a mistrial in a case less than capital is a matter in the discretion of the judge, and the judge need not find facts constituting the reason for such order.' . . . 'We conclude that the trial judge in cases less than capital may, in the exercise of sound discretion, order a mistrial before verdict, without the consent of the defendant, for physical necessity such as the incapacitating illness of judge, juror or material witness. . . . His order is not reviewable except for gross abuse of discretion, and the burden is upon defendant to show such abuse.' . . . The incapacitating illness of the only counsel for one defendant, which developed after the trial began, is within the rule. The order withdrawing a juror, declaring a mistrial, and continuing the case to the next session of the court was valid. Hence the plea of former jeopardy was properly denied."

To like effect, see *State v. Pfeifer,* 266 N.C. 790, 147 S.E. 2d 190, where a juror became suddenly ill.

[3]     There was no abuse of discretion in the instant case. The evidence was sufficient to support the denial of the plea of former jeopardy as a matter of law. In addition, the defendant consented to the order of mistrial. In *State v. Crocker,* 239 N.C. 446, 80 S.E. 2d 243, the following was stated:

> "It is well established that the plea of former jeopardy cannot prevail on account of an order of mistrial when such order is entered upon motion or with the consent of the defendant."

The first contention of the defendant is without merit.

[5]     The second contention of the defendant is that the trial judge erred in refusing to grant her motions for a special venire. It is argued that, if she was to get a fair and impartial trial, a special venire should have been called or the action removed to another county. In support of this argument, it is pointed out that twenty-two of the forty-nine prospective jurors were excused for cause since,

in their opinions, they were prejudiced against the defendant and her husband, or each of them and since, in their opinions, they could not give the defendant and her husband, or either of them, a fair and impartial trial.

**[4]** It is a matter of discretion with the trial judge whether to call a special venire or to remove the action to another county. G.S. 9-11(b) provides, *inter alia,* that "[t]he presiding judge may, in his discretion, . . . direct . . . a special venire be selected. . . ." G.S. 9-12(a) provides, *inter alia,* that "any judge of the superior court, [on the motion of the defendant] if he is of the opinion that it is necessary in order to provide a fair trial . . . may order as many jurors as he deems necessary to be summoned from any county or counties. . . ." G.S. 1-84 provides, *inter alia:*

> "In all . . . criminal actions in the superior and criminal courts, when it is suggested . . . that there are probable grounds to believe that a fair and impartial trial cannot be obtained in the county in which the action is pending, the judge may order a copy of the record of the action removed to some adjacent county for trial, if he is of the opinion that a fair trial cannot be had in said county. . . ."

In *State v. Allen,* 222 N.C. 145, 22 S.E. 2d 233, the Supreme Court stated:

> "A motion for change of venue or for a special venire, may be granted or denied in the discretion of the trial judge, and his decision in the exercise of such discretion is not reviewable [in this Court] unless gross abuse [of discretion] is shown."

In *State v. Scales,* 242 N.C. 400, 87 S.E. 2d 916, the Supreme Court stated:

> "A motion for a change of venue or for a special venire from another county, upon the ground that the minds of the residents in the county in which the crime was committed had been influenced against the defendant, is addressed to the sound discretion of the trial court."

See *State v. Ray,* 274 N.C. 556, 164 S.E. 2d 457; *State v. Conrad,* 4 N.C. App. 50, 165 S.E. 2d 771; *State v. Porth,* 269 N.C. 329, 153 S.E. 2d 10.

**[5]** The record in the instant case reveals no abuse of discretion by the trial judge in denying the motions for a special venire.

The second contention of the defendant is without merit.

**[6]** The third contention of the defendant is that the trial judge

erred in denying her motions for judgment as of nonsuit entered at the close of the State's evidence and renewed at the conclusion of all the evidence. It is argued that "[t]here is not one iota of evidence that the defendant placed a finger on the deceased child except to love and to care for the child." There is in fact no direct evidence that the defendant is the guilty party. However, there is circumstantial evidence to the effect that she committed the crime in question. *State v. Langlois,* 258 N.C. 491, 128 S.E. 2d 803, is a case factually similar to the instant case. The Supreme Court held that the evidence raised only a mere conjecture as to the existence of the defendant's guilt and that her guilt could not be based on mere probability as to past events. By "past events" the Supreme Court was referring to the evidence that, prior to the time in question, she had been observed hitting the child with her fists and with the tongue of the child's wagon. However, these two cases are readily distinguishable.

In *Langlois* the deceased was a three-and-one-half-year-old boy who "had been suffering from anemia most of his life" and who was described as being clumsy and as falling often. In the instant case, the deceased was a three-year-old boy described as physically normal for a child his age. In *Langlois* the death resulted from extensive peritonitis caused by the rupture of the small intestine, a condition which had existed for twenty-four to forty-eight hours prior to death. The evidence did not reveal whether the defendant had actual control and custody of the child during this period of time. The doctor who performed the autopsy testified that the " 'lacerations and bruises were traumatic in nature, that is, caused by blows to his body not self-inflicted.' " The lacerations and bruises numbered approximately 150, most of which were superficial. "There were approximately a dozen or more lacerations which were through the skin which would have required suturing . . . had the child lived. The laceration on the abdomen of the child was approximately three eighths to one half inch deep." In the instant case Dr. LaTourette, who performed the autopsy, testified:

"It is my opinion these conditions had existed for at least four hours before death. . . .

. . . I have an opinion satisfactory to myself as to what caused the death of Christopher Ledbetter and that is peritonitis or inflammation of the abdominal cavity and this condition existed in his body at least four hours prior to his death.

. . . His death was caused by acute peritonitis which is a

poisoning in the abdomen cavity which had been set up for some four hours, a little more or a little less. . . ."

He further testified:

"[B]efore the autopsy I observed bruises on the body, on the abdomen, arms, legs, forehead and face. . . .

. . . The abdomen was distended. It contained a mixture of fluid and gas and the bowel was bruises (sic) at several points. There was a wide open tear through the beginning of the small intestine. The supporting tissue that holds that part of the bowel had a tear through it. . . . [T]here was a bruise in the pancreas. . . .

. . . The condition of the head and brain consisted of a bruise two to three inches in diameter in the deep part of the scalp, over the back side of the skull and a fresh hemorrhage on the underside of the brain, under the left lobe of the cerebellum.

. . . [There was] a tear in the surface of the liver. . . .

I have an opinion satisfactory to myself what would cause injuries that I have observed upon the body of Christopher Ledbetter, that is, blunt force, and I believe there were more than one blow, approximately ten blows or more in my opinion."

[6, 7]  The State's evidence was sufficient to show that, on 27 July 1967, the defendant had actual and exclusive control and custody of the child from 7:30 in the morning until between 2:00 and 3:00 in the afternoon when the child was taken to the office of Dr. Baker. The defendants' husband and father of the child was at his place of employment during such period. He testified that he had bathed the child the night before "and there were not any noticeable bruises on him to the extent that I would be concerned or alarmed about him." This evidence distinguishes the two cases, and it is abundantly clear that the State's evidence in the instant case is much stronger and probative than in *Langlois*.

" 'On motion to nonsuit, the evidence must be considered in the light most favorable to the state, and the state is entitled to every reasonable intendment thereon and every reasonable inference therefrom. Contradictions and discrepancies, even in the state's evidence, are for the jury to resolve, and do not warrant nonsuit. Only the evidence favorable to the state will be considered, and and (sic) defendant's evidence relating to matters of defense, or defendant's evidence in conflict with that of

the state, will not be considered.' " (citation omitted) *State v. Young*, 271 N.C. 589, 157 S.E. 2d 10.

"The State's evidence is circumstantial, but the test of its sufficiency is the same whether the evidence be circumstantial, direct, or both. 'If there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury.' " (citation omitted) *State v. Tillman*, 269 N.C. 276, 152 S.E. 2d 159.

"The rule stated in [*State v. Tillman, supra*] does not mean that the evidence, in the Court's opinion, excludes every reasonable hypothesis of innocence. Should the Court decide that the State has offered substantial evidence of defendant's guilt, it becomes a question for the jury whether this evidence establishes beyond a reasonable doubt that defendant, and no other person, committed the crime charged." *State v. Bailiff*, 2 N.C. App. 608, 163 S.E. 2d 398.

"[T]here must be substantial evidence of all material elements of the offense to withstand the motion to dismiss. It is immaterial whether the substantial evidence is circumstantial or direct, or both. To hold that the court must grant a motion to dismiss unless, in the opinion of the court, the evidence excludes every reasonable hypothesis of innocence would in effect constitute the presiding judge the trier of the facts." *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431.

Again, quoting from Brock, J., in *State v. Bailiff, supra:* "Considering the evidence in the light most favorable to the State we think the combination of facts as disclosed by the evidence constitutes substantial evidence of defendant's guilt, and not merely suspicious circumstances."

The third contention of the defendant is without merit.

**[8]** The fourth contention of the defendant is that the trial judge committed error in accepting the verdict of the jury. It is argued that the trial judge instructed "the jury that they could only find the defendant guilty or not guilty of involuntary manslaughter and could not find her guilty of manslaughter," but that "the jury convicted her of manslaughter directly contrary to the . . . charge." The record reveals the following:

"The jury returns in open court, the defendant being present and the Clerk taking the verdict stated:

CLERK: Members of the jury, have you reached a verdict?

FOREMAN: We have.

CLERK: How do you find? Do you find the defendant, Carolyn Ledbetter, guilty or not guilty of manslaughter, as charged in the Bill of Indictment . . .?

(EXCEPTION No. 5)

FOREMAN: We have found her guilty."

The bill of indictment (*supra*) is in accordance with the following definition:

"Involuntary manslaughter is the unlawful killing of a human being, unintentionally and without malice, proximately resulting from the commission of an unlawful act not amounting to a felony, or resulting from some act done in an unlawful or culpably negligent manner, when fatal consequences were not improbable under all the facts existent at the time, or resulting from the culpably negligent omission to perform a legal duty." 4 Strong, N. C. Index 2d, Homicide, § 6, p. 197.

Judge Collier in his charge to the jury, after defining voluntary manslaughter, stated:

"In this case, you are not to concern yourself with voluntary manslaughter. You are to concern yourself with involuntary manslaughter.

.  .  .

So, I charge you . . . if you find from the evidence and beyond a reasonable doubt . . . that . . . the defendant . . . so mistreated and abused the deceased child . . . or that she so failed to use that degree of care toward the deceased child which a reasonably prudent person would use under the same or similar circumstances and that such conduct was accomplished by such wanton and reckless disregard of the consequences so as to amount to culpable or criminal negligence . . . and such conduct on her part was the proximate result of the death of Christopher Ledbetter, then it would be your duty to convict the defendant . . . of involuntary manslaughter."

The charge, to which no exception was interposed, is concerned solely with one crime, involuntary manslaughter. Voluntary manslaughter was not involved in any manner, and this was unequivocally brought to the attention of the jury. There could have been no confusion in the jurors' minds as to what crime was submitted to

them for consideration or as to what crime the clerk was referring to when he spoke of the bill of indictment.

In *State v. Green,* 266 N.C. 785, 147 S.E. 2d 377, it was stated:

"There can be no doubt as to the identity of the criminal offense of which defendant was convicted. What was said in . . . *S. v. Thompson,* 257 N.C. 452, 126 S.E. 2d 58, is controlling here: 'A verdict, apparently ambiguous, "may be given significance and correctly interpreted by reference to the allegations, the facts in evidence, and the instructions of the court." . . . "The verdict should be taken in connection with the charge of his Honor and the evidence in the case." . . .' "

In the instant case there could be no doubt as to the identity of the criminal offense of which the defendant was charged, tried and convicted. "When the verdict is interpreted with reference to the warrant, the evidence, and the charge, it is unambiguous." *State v. Anderson,* 265 N.C. 548, 144 S.E. 2d 581.

The fourth contention of the defendant is without merit.

[9]    The fifth contention of the defendant is that the trial judge committed error in attempting to take the verdict a second time after the clerk had taken the verdict once and after an exception had been interposed by the defendant. The following appears in the record:

"CLERK:   How do you find? Do you find the defendant, Carolyn Ledbetter, guilty or not guilty of manslaughter, as charged in the Bill of Indictment . . .?

(EXCEPTION No. 5)

FOREMAN:   We have found her guilty.

THE CLERK:   You find the defendant guilty, so say you all?

THE COURT:   Now, members of the jury, this is the last jury case we will have this week. (Jury excused).

MR. REDDEN:   I move that the verdict be set aside. Your Honor charged that [they] could only find her guilty of involuntary manslaughter. They found her guilty of manslaughter as charged in the Bill of Indictment.

THE COURT:   They were only considering involuntary manslaughter.

MR. REDDEN:   Maybe so, but they came in with a general verdict of guilty as charged in the Bill of Indictment.

MR. LOWE: If your Honor would call them back.

MR. REDDEN: I don't know whether you can do that or not. I don't think you can do that at all. They have already rendered their verdict and I move to set it aside.

THE COURT: You had better bring them back, so we can clear it up. Sheriff, bring them on back. (Jury comes back in courtroom.)

MR. REDDEN: Will your Honor let the record show that the jury had left the courtroom and your Honor calls them back.

THE COURT: Yes, sir. Would you rise, please. (Jury stands)

THE COURT: It has been brought to my attention that in taking the verdict, the Clerk used the word manslaughter and I have asked him to take the verdict again before you leave. Take the verdict.

CLERK: How do you find? Do you find the defendant Carolyn Ledbetter guilty or not guilty of involuntary manslaughter, as charged by the Court . . .?

FOREMAN: We have found her guilty."

It is argued that the trial judge committed error in accepting the initial verdict and in not instructing the jurors to "retire and render a proper verdict based upon the instructions." As stated *supra,* it is clear that the defendant was properly found guilty of involuntary manslaughter. The initial verdict is unambiguous when interpreted with reference to the warrant, the evidence and the charge. When the jury returned and again stated that they had found her guilty of "involuntary manslaughter", this was nothing more than a simple change in form. The change, which was in fact unnecessary, did not prejudice the defendant in any way. It was simply a different way of saying the same thing. The substance and meaning of the verdict remained unaltered. The second purported taking of the verdict was mere surplusage and the defendant was in no way prejudiced. See *State v. Whitley,* 208 N.C. 661, 182 S.E. 338; *State v. Snipes,* 185 N.C. 743, 117 S.E. 500; and *State v. Kinsauls,* 126 N.C. 1095, 36 S.E. 31.

The fifth contention of the defendant is without merit.

[10] The sixth contention of the defendant is that the trial judge committed error in refusing to grant her motion to set the verdict aside. It is argued that the trial judge should have set the verdict aside "as being inconsistent and directly contrary to his charge." However, as seen *supra,* such an argument is unfounded. The trial

judge acted within his discretion, and there was absolutely no abuse of this discretion. *State v. Massey,* 273 N.C. 721, 161 S.E. 2d 103.

The sixth contention of the defendant is without merit.

This was a difficult and emotional case, and it is apparent that the trial judge approached his task with the utmost concern and preparation. The defendant had a fair and impartial trial, and her rights were vigorously protected at each step of the proceedings. The triers of the facts found against the defendant. In law we find

No error.

BROCK and MORRIS, JJ., concur.