STATE OF NORTH CAROLINA v. SALVATORE MONTALBANO

No. 8426SC372

(Filed 5 March 1985)

1. **Criminal Law § 148.1— denial of motion to dismiss for double jeopardy—interlocutory appeal—substantial right involved**

   Defendant was entitled to pursue an appeal based on the denial of his motion to dismiss for double jeopardy even though it was interlocutory because it concerned a substantial right, that of the defendant not to be put on trial twice for the same offense. G.S. 1-277, G.S. 7A-27.

2. **Constitutional Law § 34— double jeopardy—prior mistrial**

   Defendant's motion for dismissal based on double jeopardy was properly denied where the judge in his first trial had declared a mistrial after personally observing a police officer in conversation with two jurors, where the police officer was the chief investigator of the case and had assisted the district attorney in court, and where some of the victims of defendant's alleged crime were colleagues of the police officer. The trial judge acted reasonably and within his discretion in declaring a mistrial sua sponte to implement the important state policies of preserving the impartiality of the jury and assuring the credibility of the jury verdict.

APPEAL by defendant from *Grist, Judge.* Order entered 12 March 1984 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 10 January 1985.

Defendant was charged with four counts of assault with a deadly weapon on an officer and two counts of assault with a deadly weapon with intent to kill. On 4 October 1983 a jury of twelve, plus one alternate, was empaneled and the presentation of evidence began.

On the morning of 6 October 1983, the trial judge, Judge Charles C. Lamm, observed Investigator Steve Harkness of the Mecklenburg County Police Department in conversation with one or two jurors at a coffee shop before trial. Since Officer Harkness was assisting the District Attorney in handling the case, the trial

judge conducted a hearing out of the presence of the jury to determine what had been said.

After the hearing, the trial judge declared a mistrial. On 5 March 1984, defendant filed a motion to dismiss on double jeopardy grounds. On 7 March 1984, after a hearing, Judge William T. Grist denied defendant's motion. Defendant appeals this order.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General David E. Broome, Jr., for the State.*

*Paul Kaplan; and J. Tony Serra and Denise Anton, by Denise Anton, for defendant appellant.*

ARNOLD, Judge.

[1]   At issue in this appeal are the questions (1) whether defendant will be subjected to double jeopardy on retrial, when during his first trial on the same charges the court declared a mistrial, and (2) whether, in view of the necessity for the mistrial and the public interest in completed trials, the retrial should be barred, or not. Although this appeal is interlocutory, it potentially concerns a "substantial right," that of the defendant not to be put to trial twice for the same offense. *See State v. Jones*, 67 N.C. App. 413, 417-18, 313 S.E. 2d 264, 267-68 (1984) (Johnson, J., dissenting). Under our statutes, G.S. 1-277 and G.S. 7A-27, defendant accordingly may pursue this appeal.

[2]   We now consider defendant's double jeopardy claim. Jeopardy "attaches" when a defendant in a criminal prosecution is put on trial on a valid indictment or information, before a court of competent jurisdiction, after arraignment, after plea, and when a competent jury has been empaneled and sworn. *State v. Shuler*, 293 N.C. 34, 42, 235 S.E. 2d 226, 231 (1977). In the present case, the jury had been empaneled, and the third day of testimony was about to begin. Jeopardy technically had attached. Yet, our conclusion that jeopardy had attached, in a case where mistrial is declared prior to the verdict, only "begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial." *Illinois v. Somerville*, 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed. 2d 425, 433 (1973).

A second trial after the first has ended by an order of mistrial is not precluded by a plea of former jeopardy where the

mistrial was declared, *even over defendant's objections*, due to a "physical necessity" or "the necessity of doing justice." *Shuler*, 293 N.C. at 42-43, 235 S.E. 2d at 231. The standard employed in our state is consistent with that established by the Supreme Court in *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824):

> [T]he law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, *taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.* They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes. . . .

*Perez*, 22 U.S. (9 Wheat.) at 580, 6 L.Ed. at 165 (emphasis added).

More recently, the Supreme Court has stated that in scrutinizing the trial judge's actions, and determining double jeopardy claims, an appellate court should not overlook the public interest in completed trials: "[t]he interests of the public in seeing that a criminal prosecution proceed to verdict, either of acquittal or conviction, need not be forsaken by the formulation or application of rigid rules that necessarily preclude the vindication of that interest." *Somerville*, 410 U.S. at 463, 93 S.Ct. at 1070, 35 L.Ed. 2d at 430.

The appellate court's evaluation of a double jeopardy claim must involve a balancing of interests:

> [W]here the declaration of a mistrial implements a reasonable state policy and aborts a proceeding that at best would have produced a verdict that could have been upset at will by one of the parties, the defendant's interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice. *Wade v. Hunter, supra.*

*Somerville*, 410 U.S. at 471, 93 S.Ct. at 1074, 35 L.Ed. 2d at 435.

The trial court in the present case observed an improper conversation between one or two jurors and a police officer, Steve

Harkness, of the Mecklenburg County Police Department. In its order of mistrial the court made the following findings of fact, in pertinent part:

> 2. . . . that from the testimony of Officer Harkness outside the presence of the jury the conversation concerned nothing about the case being tried except an inquiry by Juror Number 4 as to whether or not she might be off next week and as to whether or not the case might continue through the weekend, to which Officer Harkness replied he thought the trial could go today and possibly tomorrow, and that if it was not finished Friday that it would probably be recessed for the weekend and continue on Monday.
>
> . . . .
>
> 4. That at the time Officer Harkness was aware of the Court's previous cautionary instructions. . . .
>
> 5. That Officer Harkness is an investigator for the Mecklenburg County Police Department and has been present in court seated with the district attorney and assisting the district attorney throughout the trial of this matter, and was the chief investigator of the matters being tried.
>
> 6. That this case involves charges against the defendant among which charges two Mecklenburg County police officers are the alleged victims of the defendant's alleged criminal assaults.
>
> 7. That Officer Harkness felt at the time he did not intentionally violate the court's cautionary instructions and does not feel at this time he has violated these instructions.

The trial judge then concluded that Officer Harkness, whether intentionally or not, violated the court's cautionary instructions, which had been given repeatedly. The judge concluded further that:

> 2. . . . [D]ue to the Court's personal observation of the events which are the subject of this inquiry and the Court's findings of fact based on its personal observation appearing above, the credibility of the Court has been put at issue in this case.

3. That due to the involvement with two jurors an improper element has been placed into the case which the Court feels affects the ability of the two jurors to do their duty as fair and impartial jurors; and the Court further feels that there is a reasonable probability that the parties in this case can no longer receive a fair and impartial trial.

After concluding his order, the trial judge then observed that he had:

[N]o reason to doubt what Officer Harkness said about his conversation with the juror and the events that took place but due to the Court's personal observation of the events that took place my credibility has been placed at issue, and for that reason and because of the repeated instructions by the Court and due to the fact that what Mr. Harkness did and the members of that department are alleged victims in this matter, and due to the fact that as I understand it Mr. Harkness is the chief investigator regarding this matter, the Court has no alternative but to declare a mistrial.

Thus, because the police officer was the chief investigator of the case and had assisted the district attorney in court, because some of the victims of the defendant's alleged crime were colleagues of the police officer, because two jurors were involved in the conversation, and because the judge had personally observed the conversation, the trial judge concluded that his credibility and the impartiality of the jury would be in question if the trial proceeded.

The trial judge was faced with multiple sources of suspicion. In these circumstances, the trial judge acted reasonably and within his discretion in declaring a mistrial *sua sponte* to implement the important state policies of preserving the impartiality of the jury and assuring the credibility of the jury verdict, *cf. State v. Mettrick*, 305 N.C. 383, 385, 289 S.E. 2d 354, 356 (1982) (discussing the need for public confidence in the jury verdict in cases where police officers who are state witnesses have contact with jury members as jury custodians). The trial judge sought to protect the defendant, and to see that the "ends of public justice" would not be defeated. He did not abuse his discretion.

The record contains no evidence of bad faith or irregularity on the part of the prosecution or the trial judge. The mistrial

clearly was not manufactured to harass the defendant or to deprive him of trial before a particular jury, thus giving the State a more favorable opportunity to convict, *see Shuler*, 293 N.C. at 46, 235 S.E. 2d at 233, *citing United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed. 2d 267 (1976); *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed. 2d 425 (1973). *See also Gori v. United States*, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed. 2d 901 (1961); *State v. Simpson*, 303 N.C. 439, 447, 279 S.E. 2d 542, 547 (1981). ("Absent oppressive practices by the State, . . . the public's interest in a final adjudication of guilt or innocence outweighs the defendant's right to be free from further judicial scrutiny after a mistrial is declared.")

The public interest in a completed trial of the defendant, resulting in either acquittal or conviction, runs strong in this case, especially given the reasonableness of the trial judge's action. It outweighs the defendant's right to proceed to verdict before the first jury empaneled in this case. We affirm the denial of the defendant's motion for dismissal of the charges against him on double jeopardy grounds.

Affirmed.

Judges WELLS and PARKER concur.