MURPHY, Judge.
 

 *651
 
 When a non-capital defendant's trial counsel fails to object, or consents, to a
 
 sua sponte
 
 mistrial declared for "manifest necessity," the trial judge's decision to declare the mistrial is unpreserved and not subject to appellate review. However, where related ineffective assistance of counsel claims are raised alleging that but for counsel's failure to object to the mistrial, a defendant would not have been subjected to double
 
 *652
 
 jeopardy, we review these claims under the framework announced by the U.S. Supreme Court in
 
 Strickland v. Washington,
 

 466 U.S. 668
 
 ,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984). Here, Albert Mathis ("Defendant") fails to show that he was prejudiced by his attorney's failure to object to the mistrial. One juror was going to be absent the following day, and the trial court judge had "absolutely no faith" in the alternate juror. Under these circumstances, the trial court did not abuse its discretion as the judge could have reasonably concluded that the trial could not proceed in conformity with the law. As a result, Defendant's second trial did not violate his constitutional right to be free from double jeopardy, and he can show no prejudice by his counsel's acquiescence in the first mistrial.
 

 BACKGROUND
 

 On 16 April 2013, Defendant and Jerry Jennings ("Jerry") got into a physical altercation near a fishing hole in Wilkes County. Jerry was rendered unconscious due to the numerous blows Defendant inflicted upon him. After Jerry was subdued, Defendant "got the heck out of [D]odge," leaving Jerry lying unconscious in a field with no one else around. Defendant was indicted for felony assault with a deadly weapon (steel-toed boots) inflicting serious injury in violation of N.C.G.S. § 14-32(a).
 

 Defendant's First Trial: 11-12 February 2015 ("2015 Trial")
 

 The first trial began on 11 February 2015 in Wilkes County Superior Court. On 12 February 2015, after the State's case-in-chief, the State moved to amend the indictment to allege that Defendant had struck Jerry with his limbs, rather than his steel-toed boots. This motion was denied. After denying the State's motion, and while still outside the presence of the jury, Judge David L. Hall expressed to the parties his concerns about the ability to move forward with the trial. A juror's wife was having a heart procedure and would be unavailable, and Judge Hall had "no confidence" and "absolutely no faith" in the alternate juror. After voicing his concerns, Judge Hall asked the parties if they wished to be heard. Defense Counsel indicated that he supported the mistrial for strategic reasons related to Defendant's testimony and the ability to get an instruction on self-defense.
 

 The Court: What I have concluded is that the motion to amend should be denied ... Which brings me to my greatest concern now, which is it is presently 2:30 on Thursday, as I indicated to counsel on Monday, I have a very important appointment with a specialist tomorrow morning involving a hole in my retina, in my left eye and a
 
 *863
 
 floater in
 
 *653
 
 my right eye. Further, we have one juror, Juror Number 9 no, Juror Number 8, his wife is having a heart catheterization and a pacemaker procedure tomorrow and I have an alternate juror Mr. Maston, whom I have no confidence in because I believe if I inquire I believe his answer is going to be he has not been able to hear much of what has transpired and I cannot hold over, so, I'm concerned about that. Let me hear from the parties.
 

 Defense Counsel: Your Honor, we appreciate the Court's ruling and we are prepared to go forward, but in light of the time constraints Mr. Mathis, it would be my intent once the State, I guess has rested, it would be my intent to put him on the stand, but quite frankly, I don't personally believe that with instructions, closing arguments, and whatnot and the charge conference, I just quite frankly don't believe that this jury will have any meaningful amount of time to deliberate, if, in fact, it gets to them by 5 o'clock. So, my client is in agreement and I have talked to him because I have explained and I will state for the record my main concern right now is, if I put him on the stand, time expires and we come back for another trial at a later date, I have just provided Mr. Bauer and the State with another 15 to 20 minutes of direct cross-examination that could, in fact, be utilized against him at a later trial. I do not wish to do that, but I do not want the send this case to the jury without Mr. Mathis testifying.
 

 The Court: He would not get an instruction on self-defense.
 

 Defense Counsel: Exactly.
 

 The trial court then declared a mistrial based on "manifest necessity" and "to preserve the ends of justice," and neither the State nor Defendant's counsel objected.
 

 The Court: We are now in a posture where moving forward seems unpractical, not practical and not feasible. And the Court has obligations which it may not avoid. I may not hold over and I do not see a reasonable prospect of continuing the case beyond today. I find that the interest of justice requires the matter be mis-tried. I find that the prospect of completing this trial is grim. That Juror Number 8, has a significant-his wife has a significant medical procedure tomorrow. The Court has absolutely no
 
 *654
 
 faith in the alternate juror. Is the State joining in a motion for mistrial?
 

 The State: We are, Your Honor. We would renew our motion unsworn.
 
 [1]
 

 The Court: I think that I have been scrupulously fair to both parties this entire time, trying to protect both the State's right to a fair trial and Mr. Mathis' rights to a fair trial. And it seems to me that neither party may enjoy a fair trial at this point. With the consent of the Defense and the State, I'm declaring a mistrial based on manifest necessity and to preserve the ends of justice. I find that jeopardy is not attached for purposes of retrying the matter and that the matter may be put on at the mutual convenience of the parties.
 

 ....
 

 The Court: I will order a transcript of the proceedings, costs shall be borne by the State of North Carolina because of manifest necessity and the interest of justice and unavoidable time constraints. I will also say that the parties have raised legal issues which have required and they have
 
 *864
 
 been genuine and made in good faith, but legal issues that have required a great deal of research, which has simply made it not practical to conclude this trial. So the Court strikes the jury as impaneled. The Court declares a mistrial as of manifest necessity and that further proceedings in this trial would result in manifest in justice. And the matter
 
 *655
 
 may be re-calendared at the mutual convenience of these parties or by further order of this Court. All right. If you will bring-does either party wish to be heard?
 

 The State: No, sir.
 

 Defense Counsel: No, sir.
 

 The Court: If you'll bring the jury in, please. I will explain to them and let them go.
 

 Defendant's Second Trial: 13-14 April 2016 ("2016 Trial")
 

 On 6 April 2016, the grand jury issued a superseding indictment against Defendant for Felony Assault with a Deadly Weapon with Intent to Kill Inflicting Serious Injury. The weapons named in this indictment were Defendant's "hands, feet, and arms." Defendant's second trial began on 13 April 2016 before Judge Lindsey Davis in Wilkes County Superior Court. On 14 April 2016, a jury convicted Defendant of assault inflicting serious injury, a misdemeanor. Judge Davis ordered a suspended sentence of 150 days, and an active sentence of 30 days in Wilkes County Jail to be followed by 18 months of supervised probation. Trial counsel for Defendant did not make any motion to dismiss before, during, or after trial on double jeopardy grounds. Defendant timely appealed.
 

 I. DOUBLE JEOPARDY
 

 Defendant first argues that he was subjected to double jeopardy because the trial court erred by declaring a mistrial at the end of his 2015 trial in the absence of "manifest necessity." We disagree.
 

 "Freedom from multiple prosecutions for the same offense is guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and by Article I, Section 19 of the Constitution of North Carolina."
 
 State v. White
 
 ,
 
 85 N.C. App. 81
 
 , 86,
 
 354 S.E.2d 324
 
 , 328 (1987) (internal citations omitted). Nevertheless, a second trial after a mistrial is not always barred by the Double Jeopardy Clause, and "[i]t is well established that the plea of former jeopardy cannot prevail on account of an order of mistrial when such order is entered upon motion or with the consent of the defendant."
 
 State v. Crocker
 
 ,
 
 239 N.C. 446
 
 , 449,
 
 80 S.E.2d 243
 
 , 245-46 (1954) ;
 
 see also
 

 State v. Dry
 
 ,
 
 152 N.C. 813
 
 , 817,
 
 67 S.E. 1000
 
 , 1002 (1910) ("Where the prisoners assent to a mistrial, they cannot afterwards be heard to object."),
 
 overruled on other grounds by
 

 State v. Huff
 
 ,
 
 325 N.C. 1
 
 ,
 
 381 S.E.2d 635
 
 (1989). Furthermore, "[t]he constitutional right not to be placed in jeopardy twice for the same offense, like other constitutional rights, may be waived by the defendant, and
 
 *656
 
 such waiver is usually implied from his action or inaction when brought to trial in the subsequent proceeding."
 
 State v. Hopkins
 
 ,
 
 279 N.C. 473
 
 , 475-76,
 
 183 S.E.2d 657
 
 , 659 (1971). To avoid waiving this right, a defendant must properly raise the issue of double jeopardy before the trial court.
 
 State v. McLaughlin
 
 ,
 
 321 N.C. 267
 
 , 272,
 
 362 S.E.2d 280
 
 , 283 (1987) ("[b]y failing to move in the trial court to arrest judgment on either conviction, or otherwise to object to the convictions or sentences on double jeopardy grounds, defendant has waived his right to raise this issue on appeal.").
 

 Defendant argues that the Double Jeopardy Clause precluded his second trial in 2016 because there was not a "manifest necessity" to justify the mistrial declared in his 2015 trial. However, this issue has not been preserved for appeal because he consented to the mistrial, and Defendant failed to raise the issue during his second trial in 2016.
 
 State v. White
 
 ,
 
 134 N.C. App. 338
 
 , 342,
 
 517 S.E.2d 664
 
 , 667 (1999) ( "[t]o avoid waiving this right, a defendant must properly raise the issue of double jeopardy before the trial court.") (citations omitted). Accordingly, we dismiss his appeal as to this issue and do not reach the merits of his stand-alone double jeopardy argument.
 

 II. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS
 

 Defendant advances two Sixth Amendment right to counsel claims. First, he alleges that counsel during the first trial was ineffective
 
 *865
 
 because he consented to the trial court's mistrial order in the absence of a "manifest necessity." Second, Defendant alleges that his counsel in the second trial was ineffective because he failed to move for a dismissal of the charges on double jeopardy grounds. We disagree as to the first claim which renders his second claim moot.
 

 Strickland
 
 announced a two prong test for ineffective assistance of counsel claims.
 
 State v. Givens
 
 ,
 
 246 N.C. App. 121
 
 , 130-31,
 
 783 S.E.2d 42
 
 , 49 (2016) (citing
 
 State v. Braswell
 
 ,
 
 312 N.C. 553
 
 ,
 
 324 S.E.2d 241
 
 (1985) ). Under
 
 Strickland
 
 , a defendant must show that his counsel's performance (1) fell below an objective standard of professional reasonableness and (2) that he was prejudiced by the error.
 
 See
 

 Strickland
 
 , at 687,
 
 104 S.Ct. at 2064
 
 ,
 
 80 L.Ed.2d at 693
 
 . Prejudice is established by showing that "the error committed was so serious as to deprive the defendant of a fair trial."
 

 Id.
 

 In evaluating ineffective assistance of counsel claims, a court may bypass the performance inquiry and proceed straight to the question of prejudice.
 
 Id
 
 . at 697,
 
 104 S.Ct. at 2069-70
 
 ,
 
 80 L.Ed.2d at 699
 
 . We conclude that Defendant's first claim fails under the prejudice prong of
 
 Strickland
 
 as the trial court did not abuse its discretion in declaring a mistrial due to a manifest necessity. Counsel's failure to object was not of any consequence.
 

 *657
 
 A second trial after a mistrial of a defendant is not barred by the Double Jeopardy Clause "where a defendant's first trial ends with a mistrial which is declared for a manifest necessity or to serve the ends of public justice."
 
 State v. Shoff
 
 ,
 
 128 N.C. App. 432
 
 , 434,
 
 496 S.E.2d 590
 
 , 591 (1998) (citing
 
 State v. Lachat
 
 ,
 
 317 N.C. 73
 
 , 82,
 
 343 S.E.2d 872
 
 , 877 (1986) );
 
 see also
 

 State v. Odom
 
 ,
 
 316 N.C. 306
 
 , 310,
 
 341 S.E.2d 332
 
 , 334 (1986) (stating that an order of mistrial after jeopardy has attached may only be entered over a defendant's objection where "manifest necessity" exists). We review a trial court's decision to declare a mistrial for abuse of discretion, and the decision will not be disturbed unless it is "so arbitrary that it could not have been the result of a reasoned decision."
 
 See
 

 State v. Wilson
 
 ,
 
 313 N.C. 516
 
 , 538,
 
 330 S.E.2d 450
 
 , 465 (1985). "The exercise of this discretion is governed by [N.C.G.S.] § 15A-1063 and 15A-1064."
 
 See
 

 Shoff
 
 , at 434,
 
 496 S.E.2d at 591
 
 . N.C.G.S. § 15A-1063 provides:
 

 Upon motion of a party or upon his own motion, a judge may declare a mistrial if:
 

 (1) It is impossible for the trial to proceed in conformity with law[.]
 

 N.C.G.S. § 15A-1063 (2017). N.C.G.S. § 15A-1064 requires a trial court to make findings of fact before granting a mistrial and enter them into the record.
 

 Before granting a mistrial, the judge must make finding of facts with respect to the grounds for the mistrial and insert the findings in the record of the case.
 

 N.C.G.S. § 15A-1064 (2017).
 

 "Our courts have set forth two types of manifest necessity: physical necessity and the necessity of doing justice."
 
 State v. Schalow
 
 , --- N.C. App. ----, ----,
 
 795 S.E.2d 567
 
 , 576 (2016) (citing
 
 Crocker
 
 , at 450,
 
 80 S.E.2d at
 
 246 ). "For example, physical necessity occurs in situations where a juror suddenly takes ill in such a manner that wholly disqualifies him from proceeding with the trial."
 
 Schalow
 
 , at ----,
 
 795 S.E.2d at 576
 
 . "Whereas the necessity of doing justice arises from the duty of the [trial] court to guard the administration of justice from fraudulent practices and includes the occurrence of some incident of a nature that would render impossible a fair and impartial trial under the law."
 
 Id
 
 . The manifest necessity present in the case
 
 sub judice
 
 involves a combination of "physical necessity" and the "necessity of doing justice."
 

 After the State's case-in-chief, the trial court expressed concerns related to juror number 8 because he was going to be physically
 
 *658
 
 unavailable due to his wife's upcoming heart procedure. Also, the trial judge had "no confidence" and "absolutely no faith" in the alternate juror because he believed that the alternate had not heard much of the trial testimony up to that point. It is well settled that "[t]he trial judge is empowered to decide all questions regarding the competency of jurors," and the question of juror competency includes issues related to physical or mental limitations that would "hamper his or her ability to perform a juror's duties."
 
 See
 

 State v. King
 
 ,
 
 311 N.C. 603
 
 , 615,
 
 320 S.E.2d 1
 
 , 9 (1984). Ensuring juror competency and availability
 
 *866
 
 is especially important because twelve jurors must unanimously agree to find a defendant guilty.
 
 See
 
 N.C. Const. art. I, § 24 ("No person shall be convicted of any crime but by the unanimous verdict of a jury in open court[.]");
 
 State v. Bindyke
 
 ,
 
 288 N.C. 608
 
 , 623,
 
 220 S.E.2d 521
 
 , 531 (1975) ("there can be no doubt that the jury contemplated by our Constitution is a body of twelve persons[.]"). The twelve juror requirement is strict, and in
 
 State v. Hudson
 
 , our Supreme Court held that that notwithstanding defendant's consent, the verdict was a nullity because it was reached by a jury of eleven.
 
 See
 

 280 N.C. 74
 
 , 79,
 
 185 S.E.2d 189
 
 , 192 (1971).
 

 In light of our strict twelve juror requirement, the impending absence of juror number 8 due to his wife's heart procedure, and the judge's belief that the alternate juror would be unable to perform his duties, the trial judge could have reasonably concluded that the completion of the 2015 trial would not be fair and in conformity with the law.
 
 See
 

 State v. Cooley
 
 ,
 
 47 N.C. App. 376
 
 , 383,
 
 268 S.E.2d 87
 
 , 92 (1980) (upholding mistrial order where trial court "could reasonably conclude that a fair and impartial trial in accordance with law could not be had");
 
 see also
 

 State v. Sanders
 
 ,
 
 347 N.C. 587
 
 ,
 
 496 S.E.2d 568
 
 (1998) (holding that the record supported the trial court's decision to grant a mistrial based on the trial court's conclusion that at least one juror was not following the instructions of the trial court as to his conduct and duty as a juror);
 
 State v. Pfeifer
 
 ,
 
 266 N.C. 790
 
 ,
 
 147 S.E.2d 190
 
 (1966) (holding that defendant was not subjected to double jeopardy when his first trial ended in a mistrial due to the sudden illness of a juror);
 
 Crocker
 
 , at 452,
 
 80 S.E.2d at 248
 
 (holding that where a juror "is so incapacitated by reason of intoxicants or otherwise as to be incapable, physically or mentally, of functioning as a competent, qualified juror, the trial judge may order a mistrial");
 
 Shoff
 
 , at 434,
 
 496 S.E.2d at 592
 
 (concluding that the trial court did not abuse its discretion by declaring a mistrial "due to adverse weather conditions" that affected the jurors' ability to physically return for the second day of trial);
 
 State v. Montalbano
 
 ,
 
 73 N.C. App. 259
 
 ,
 
 326 S.E.2d 634
 
 (1985) (holding that retrial was not barred on double jeopardy grounds following a mistrial granted after the judge observed an investigator, who
 
 *659
 
 was assisting the district attorney, engage in conversation with one or two jurors before trial);
 
 State v. Ledbetter
 
 ,
 
 4 N.C. App. 303
 
 ,
 
 167 S.E.2d 68
 
 (1969) (affirming a trial court's declaration of mistrial where the judge found that a juror had been taken to a hospital as the result of a sudden illness).
 

 Here, by declaring a mistrial, instead of proceeding with an alternate juror that he had no confidence in, Judge Hall intelligently exercised his discretion to assure the "credibility of the jury verdict,"
 
 Montalbano
 
 , at 263,
 
 326 S.E.2d at
 
 637 (citing
 
 State v. Mettrick
 
 ,
 
 305 N.C. 383
 
 , 385,
 
 289 S.E.2d 354
 
 , 356 (1982) ), and we cannot say this decision was "manifestly unsupported by reason."
 
 Shoff
 
 , at 432,
 
 496 S.E.2d at 592
 
 (citations omitted). Defendant's first claim for ineffective assistance of counsel fails because his second trial was not precluded by the Double Jeopardy Clause, and he is therefore unable to demonstrate any prejudice resulting from counsel's acquiescence and failure to object to the 2015 mistrial. Based upon our holding as to the first claim for ineffective assistance of counsel, Defendant's second claim is rendered moot. Both of Defendant's ineffective assistance of counsel arguments are overruled.
 

 CONCLUSION
 

 By failing to raise the issue of double of jeopardy in his 2016 trial, Defendant failed to preserve the issue of double jeopardy for appellate review. Furthermore, Defendant was not deprived of effective assistance of counsel in his 2015 trial where the trial court did not abuse its discretion in ordering a mistrial for manifest necessity. Defendant's second ineffective assistance of counsel claim, based on his counsel's failure to file a motion to dismiss on double jeopardy grounds in the 2016 trial, is moot.
 

 DISMISSED IN PART; NO ERROR IN PART.
 

 Judges CALABRIA and ZACHARY concur.
 

 [1]
 

 On 11 February 2015 (the first day of Defendant's trial), during the cross-examination of Jerry, Defendant's counsel asked Jerry about "a previous matter where [he] was placed under oath and testifying about this particular incident." On 12 February 2015, before the trial resumed, the State moved for a mistrial because of the potential that the jury might infer, based on defense counsel's question to Jerry, that Defendant had already been involved in "another trial" related to this incident, and the potential for this inference might prejudice Defendant, providing him with a potential error on appeal. The trial court ultimately denied the State's mistrial motion and suggested that a curative instruction, along with asking Defendant to waive any potential error on defense counsel's part due to his mentioning of another trial, would "protect the state's right to a fair trial." The trial judge provided the following curative instruction: "[a]nother housekeeping detail, yesterday some mention was made about an objection that occurred at another trial. Okay. Please put that out of your mind. Give it no consideration. This is the first time this case has been tried so that had something to do with an entirely unrelated matter and it has nothing to do with your determination in this case. Just put it out of your mind. It has no consequence to your determination."